## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | |
|---|---|
| In re: | CASE NO.: 6:21-bk-00936-LVV |
| JEFFREY RENICK HEFNER | CHAPTER 13 |
| Debtor. _____/ | |
| ISLAND COSTAL CHARTERS LLC, and ROBERT McBRIDE, | |
| Plaintiffs, | |
| v. | ADVERSARY PROCEEDING NO.: |
| JEFFREY RENICK HEFNER | |
| Defendant. _____/ | |

## COMPLAINT

Plaintiffs, Island Coastal Charters LLC and Robert McBride, (hereinafter collectively the "Plaintiffs"), by and through the undersigned counsel, brings this adversary proceeding, pursuant to 11 U.S.C § 523 and Bankruptcy Rule 4007, to determine the dischargeability of debts, and alleges in support thereof as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of this adversary proceeding under 28 U.S.C. § 157(a), 157(b), and 1334(b).

2. Venue is proper in this Court under 28 U.S.C § 1409(a) and Local Rule 107-1 of the United States Bankruptcy Court for the Middle District of Florida.

3. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) because it concerns a determination of the dischargeability of particular debts.

## PARTIES

4. Plaintiff, Island Coastal Charters LLC ("ICC"), at all times material hereto is a limited liability company organized and existing under the law of the State of Florida with its principal place of business in Brevard County, Florida

5. Plaintiff, Robert McBride ("McBride"), at all material times was resident of Brevard County, Florida.

6. Defendant, Jeffrey Renick Hefner ("Hefner" or "Debtor"), at all material times was resident of Brevard County, Florida.

## COMMON ALLEGATIONS

7. The parties have been engaged in litigation regarding the formation and operation of ICC since August of 2017, which was partially resolved by an arbitration award (the Award) rendered on October 30, 2018. Exhibit 1.

8. The Circuit Court entered final judgment on the Award on February 14, 2019. Exhibit 1.

9. Hefner appealed, but the Fifth District Court of Appeals affirmed the judgment by order and mandate on September 8, 2020 and September 29, 2020, respectively. Exhibit 2.

10. Hefner, John MacDonald (MacDonald) and McBride formed ICC on or about March 17, 2016.

11. ICC was created to be a multi-service business venture composed of five (5) aircraft companies: Island Coastal Charters, LLC (as Bahamas charter service and parent company), FlyingTigers Aviation, Inc./LLC (flight lessons), View From Above, Inc./LLC (fly and dine charters), Florida Barnstormers, Inc./LLC (bi-plane rides) and Old Pelican Aero, Inc./LLC (aircraft mechanic services) (Flying Tigers, View from Above, Florida Barnstormers, and Old Pelican Aero are also referred to as the Original Companies). Exhibit 1, Award, pp. 4-6.

12. The physical assets of the original companies, all owned by ICC, included three (3) aircraft, a Cherokee 180, Waco and Cherokee VI, Award, pp. 7-8, as well as two golf carts, aircraft mechanics tools, and other incidental items. Exhibit 2 (Order on Motion to Enforce Judgment and Injunction or Show Cause why Plaintiff Should not be Held in Contempt and Plaintiff's Motion to Stay Judgment).

13. Hefner, McBride and MacDonald were each 1/3 share owner-managers of ICC based upon capital contributions of $150,000, MacDonald's contribution being in cash, and the $150,000 each from Hefner and McBride were to be derived from the value of Hefner's and McBride's preexisting 50/50 ownership of the "Original Companies" and their assets. Award, pp. 4-6.

14. McBride maintained a spreadsheet, with copies of checks and invoices reflecting his total pre-existing investment of $166,813.02 in the Original Companies, consistent with the parties' valuation, along with bank statements, credit card statements, checks and FAA registration records for the aircraft.

15. Each of the aircraft at issue were determined by the arbitrators to be valued at that time as follows:

| Aircraft Description | Registration No. | Value |
|---|---|---|
| Waco YMF | N89B | $ 122,500.00 |
| Cherokee 180 | N4349T | $ 48,000.00 |
| Cherokee VI | N32394 | $ 90,000.00 |

16. At the time of the formation of ICC, the Waco and Cherokee VI were titled to Florida Barnstormers, and it is unknown to what entity the Cherokee 180 was titled. Exhibit 4.

17. From 2016 through 2017, the operating account of ICC, managed exclusively by Hefner, received $150,000 from MacDonald for his capital contribution, and another $949,808 in

loans from MacDonald, all while all of the companies were being operated by Hefner and were receiving business revenue.

18. Beginning in about October of 2016, conflicts began with Hefner - Hefner refused to provide account information for Florida Barnstormers although he transferred funds ICC into that account, refused to provide any information regarding payroll or income tax filings for Barnstormers, View from Above, Flying Tigers and Old Pelican Aero, became very confrontational and threatening, filed multiple unauthorized corporate filings on behalf of ICC and the Original Companies.

19. By June of 2017, Hefner unilaterally had the locks changed on the ICC hangar at the airport and lied to airport security to prompt the airport's cancelation of McBride's and MacDonald's airport security badges, while at the same time Hefner removed the Cherokee 180, Cherokee VI and Waco from the ICC hangar and moved them to an unknown location.

20. Through a series of fraudulent corporate filings, Hefner exclusively, then with his wife, maintained exclusive control all of the bank accounts for Florida Barnstormers, Flying Tigers and Old Pelican Aero, and misappropriated and converted all funds deposited to ICC by transferring the out of the ICC account and into other unknown accounts, and also exercised exclusive control over the Waco, Cherokee VI and Cherokee 180 aircraft.

21. Hefner created Sky Goddess Aviation, LLC, on March 15, 2017, managing members: Hefner and his wife.

22. Hefner changed the officers of Old Pelican Aero to Hefner and his wife on April 30, 2017.

23. Hefner changed the officers of Flying Tigers Aviation to Hefner and his wife on June 14, 2017.

24. Hefner changed the officers of Florida Barnstormers to Hefner and his wife on June 14, 2017.

25. Hefner changed the officers of View from Above to Hefner and his wife on June 14, 2017.

26. Hefner filed a fraudulent Statement of Authority for ICC on July 19, 2017 purporting to remove McBride and MacDonald as managing members.

27. The lawsuit was filed on August 2, 2017.

28. On December 19, 2017, the arbitrators set the final arbitration hearing to take place on on August 29-30, 2018.

29. Hefner transferred the Cherokee 180 from another of his shell companies, H&J Aviation, LLC, in which he was a managing member, to JRH Avgroup on February 15, 2018.

30. Hefner changed the officers of JRH Avgroup on March 28, 2018 to Hefner and his wife.

31. Hefner then fraudulently transferred the title of all three (3) planes, the Waco, Cherokee VI and Cherokee 180, into JRH Avgroup, on March 28, 2018, the same day that Hefner designated himself and his wife the exclusive officers of JRH Avgroup.

32. Hefner created Florida Air Charters, LLC, on May 11, 2018, managing members: Hefner and his wife.

33. Hefner created Melbourne Wings, LLC, on June 14, 2018, managing members: Hefner and his wife.

34. Hefner created Cherokee Wings, LLC, on June 14, 2018, managing members: Hefner and his wife.

35. Hefner signed the purchase and sale agreement to sell his "interest" in Cherokee Wings on June 24, 2018 for $85,000.

36. Hefner removed his wife as a member of Cherokee Wings, LLC, on June 28, 2018.

37. Cherokee Wings, LLC filed Articles of Amendment to the Articles of Organization on July 23, 2018, with a retroactive effective date of June 14, 2018 (the same date that Cherokee Wings, LLC was created), changing the managing members to Hefner, Milo Zonka and Aircraft Sales & Leasing, LLC.

38. On July 9, 2019, Hefner allegedly traded the Waco aircraft from his shell corporation JRH Avgroup to Victoria's Wings, LLC, allegedly in exchange for another aircraft of apparently comparable value, a Piper Lance Model PA-32RT-300T.

39. Hefner transferred the Cherokee VI from JRH Avgroup to Cherokee Wings on August 8, 2018.

40. The Waco aircraft was not actually transferred to Victoria's Wings until August 19, 2018.

41. The arbitration hearing took place on August 29-30, 2018.

42. The arbitrators entered the arbitration award on October 30, 2018.

43. The arbitrators made the following findings of fact: Hefner "improperly *removed and retained possession* of certain property of ICC", Award p. 9, specifically including "*hiding aircraft owned by subsidiaries of ICC*," Award, p. 8, that Hefner's solely owned company "JRH Avgroup" improperly *retained possession* of the Cherokee 180, Award, p. 7-8, and that "*he transferred the Waco and Cherokee VI aircraft from Florida Barnstormers to JRH, for no consideration due to the threat of litigation from MacDonald…without consent from any other owner or manager…*" Award, p. 8 foot note 3 (emphasis added). Consistent with these factual findings, the arbitrators unanimously issued an injunction requiring Hefner to return all such property to ICC. Award, p. 9.

44. On February 15, 2019 the Court confirmed the arbitration award and entered final judgment on it.

45. On February 25, 2019, Hefner changed the members of Sky Goddess Aviation from him and his wife to his son and his wife.

46. As of April 15, 2019, Hefner was listing the Waco for sale for $149,000, listing himself and JRH Avgroup as the "owner."

47. As of the present time, May 27, 2021, Hefner's wife Kimberly Hefner currently identifies herself on her Linkedin page as the manager of Sky Goddess Aviation, LLC, which provides "contract pilot services" and also as the Director of Marketing of Heavenly Events for "View from Above Biplane Rides," apparently still using the Waco aircraft "traded" to Victoria's Wings in "her" business.

48. Also at the present time, upon information and belief, Hefner controls four (4) hangars at the Melbourne Airport, Hangar #6, 1495 General Aviation Drive, Hangar #21U, 1457 General Aviation Drive, Hangar 25E, 1447 General Aviation Drive, and Hangar 12, 1495 General Aviation Drive, and the contents thereof, which are subject to investigation.

49. Hefner fraudulently transferred and converted the Cherokee 180, which he now lists as an asset of JRH Avegroup valued at only $8,500.

50. Hefner fraudulently transferred and converted the Cherokee VI aircraft, receiving and further converting the proceeds thereof: $85,000.

51. Hefner fraudulently transferred and converted the Waco aircraft.

52. Hefner has fraudulently transferred and converted an as yet unknown amount of money estimated at over $1,000,0000 in capital cash deposits and business revenue.

53. Hefner fraudulently transferred or converted assets valued at over $150,000 owned by McBride which were to serve as McBride's capital contribution to ICC.

54. Hefner fraudulently transferred or converted assets valued at over $150,000 which were to serve as Hefner's capital contribution to ICC.

55. Hefner's intentional and continuing concealment of financial records to allow for an accounting of over $1,000,000 in capital cash assets plus business revenue has precluded any means of investigation regarding Hefner's appropriation of the same, but at minimum, Hefner is liable for 1/3 of the outstanding and loaned capital of $949,808.

56. Hefner has not accurately disclosed his assets and liabilities on his bankruptcy petition.

57. Hefner has and continues to refuse to comply with any discovery requests prior to and within these proceedings, including failing to appear for deposition and directing his wife not to appear for deposition despite being subpoenaed.

58. All conditions precedent to bringing this action have been fulfilled or waived.

### COUNT I: (Fraud and/or Defalcation)
### Objection to Discharge of debt Pursuant to 11 U.S.C § 523(a)(4)

59. Plaintiff ICC restates and realleges paragraphs 1 through 39 above as if fully set forth herein.

60. This is an action to determine dischargeability of a debt pursuant to 11 U.S.C. § 523(a)(4) and Rule 4007 of the Federal Rules of Bankruptcy Procedure.

61. Section 523(a)(4) provides, in pertinent part, that a discharge under section 727 does not discharge an individual debtor from any debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny.

62. Debtor while a member of ICC acting in a fiduciary capacity intentionally and with fraudulent intent made unauthorized and fraudulent transfers of ICC property to himself and/or his shell company JRH and/or other shell companies and strawmen.

63. Debtor with fraudulent and criminal intent, knowingly obtained property of ICC, with the specific intent to deprive ICC of the property.

64. Debtor's conduct was in violation of Florida Statute § 812.014(1).

65. Debtor's conduct was in violation of Florida Statute § 605.0602(6).

66. Debtor's conduct was in violation of Florida Statute § 605.04091.

67. As a result of Debtor's conduct and violations of law, ICC was injured and has lost the benefit and possession of its property.

68. Debtor has failed and/or refused to satisfy the Final Judgment.

69. Debtor has failed and/or refused to return the property of ICC.

70. Additionally, ICC is entitled to an award of reasonable costs and attorney's fees incurred in connection with execution on the Final Judgment pursuant Florida Statute §57.115.

71. Debtor's conduct represents fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny, rendering the debt to ICC, non-dischargeable pursuant to 11 U.S.C. § 523(a)(4).

**WHEREFORE**, Plaintiff ICC respectfully requests this Court enter a judgment against the Debtor Jeffrey Renick Hefner; determining that the debts due to ICC are non-dischargeable against the Debtor; and granting to Plaintiff any other and further relief, including but not limited to interest, attorneys' fees and costs.

### COUNT II: (Willful and Malicious Injury)
### Objection to Discharge of debt Pursuant to 11 U.S.C § 523(a)(6)

72. Plaintiff ICC restates and realleges paragraphs 1 through 39 above as if fully set forth herein.

73. This is an action to determine dischargeability of a debt pursuant to 11 U.S.C. § 523(a)(6) and Rule 4007 of the Federal Rules of Bankruptcy Procedure.

74. Section 523(a)(6) provides, in pertinent part, that a discharge under section 727 does not discharge an individual debtor from any debt for willful and malicious injury by the debtor to another entity or to the property of another entity.

75. Debtor while a member of ICC intentionally and with fraudulent intent made unauthorized and fraudulent transfers of ICC property to himself and/or his shell company JRH, other shell companies and/or strawmen.

76. The debt owed to ICC by the Debtor is based on conduct described in 11 U.S.C. § 523(a)(6) and is not dischargeable.

77. By virtue of the Debtors intentional and fraudulent conduct, as alleged above, Debtor inflicted willful and malicious injury upon ICC.

78. Debtor intended the injury that resulted from his conduct or knew that his conduct was certain or substantially certain to result in ICC's injuries.

79. Debtor's conduct was done without just cause or excuse.

80. Debtor with fraudulent and criminal intent, knowingly obtained property of ICC, with the specific intent to deprive ICC of the property.

81. Debtor's conduct was in violation of Florida Statute § 812.014(1).

82. Debtor's conduct was in violation of Florida Statute § 605.0602(6).

83. Debtor's conduct was in violation of Florida Statute § 605.04091.

84. As a result of Debtor's conduct and violations of law, ICC was injured and has lost the benefit and possession of its property.

85. Debtor has failed and/or refused to return the property of ICC.

86. Debtor's Conduct described herein was willful and malicious with the intent to cause injury to ICC, rendering the debt, non-dischargeable pursuant to 11 U.S.C. § 523(a)(6).

**WHEREFORE**, Plaintiff ICC respectfully requests this Court enter judgment against the Debtor Jeffrey Renick Hefner; determining that the debts due to ICC to be non-dischargeable against the Debtor; and granting to Plaintiff any other and further relief, including but not limited to interest, attorneys' fees and costs.

**COUNT III: (False Pretenses, False Representation, and Fraud)**
**Objection to Discharge of debt Pursuant to 11 U.S.C § 523(a)(2)(A)**

87. Plaintiff ICC restates and realleges paragraphs 1 through 39 above as if fully set forth herein.

88. This is an action to determine dischargeability of a debt pursuant to 11 U.S.C. § 523(a)(2)(A) and Rule 4007 of the Federal Rules of Bankruptcy Procedure.

89. Debtor made false representations or acted fraudulently in connection with the property obtained from ICC by converting some or all of the ICC property for the Debtor's own use.

90. The obligations of the Debtor set forth in ICC's claim in the Debtor's bankruptcy case constitute a debt for false pretenses, false representations or actual fraud, and that debt is excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A).

91. ICC's was damages as a consequence of the Debtor's actions.

92. Pursuant to 11 U.S.C. § 523(a)(2)(A), the foregoing establishes that ICC's claim against the Debtor in relation to these damages are non-dischargeable based upon the Debtor's actions.

**WHEREFORE**, Plaintiff ICC respectfully request this Court enter a judgment against the Debtor Jeffrey Renick Hefner; determining that the debts due to ICC to be non-dischargeable against the Debtor; and granting to Plaintiff any other and further relief, including but not limited to interest, attorneys' fees and costs.

**COUNT IV: (Fraud and/or Defalcation)**
**Objection to Discharge of debt Pursuant to 11 U.S.C § 523(a)(4)**

93. Plaintiff McBride restates and realleges paragraphs 1 through 39 above as if fully set forth herein.

94. This is an action to determine dischargeability of a debt pursuant to 11 U.S.C. § 523(a)(4) and Rule 4007 of the Federal Rules of Bankruptcy Procedure.

95. Section 523(a)(4) provides, in pertinent part, that a discharge under section 727 does not discharge an individual debtor from any debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny.

96. Debtor while acting in a fiduciary capacity intentionally and with fraudulent intent embezzled and or made unauthorized and fraudulent transfers of McBride's property to himself and/or his shell company JRH, other shell companies and/or strawmen.

97. Debtor with fraudulent and criminal intent, knowingly obtained property of McBride, with the specific intent to deprive McBride of the property.

98. Debtor's conduct was in violation of Florida Statute § 812.014(1).

99. Debtor's conduct was in violation of Florida Statute § 605.0602(6).

100. Debtor's conduct was in violation of Florida Statute § 605.04091.

101. As a result of Debtor's conduct and violations of law, McBride was injured and has lost the benefit and possession of its property.

102. Debtor has failed and/or refused to satisfy the debt.

103. Debtor has failed and/or refused to return the property of McBride.

104. Debtor's conduct represents fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny, rendering the debt to McBride, non-dischargeable pursuant to 11 U.S.C. § 523(a)(4).

**WHEREFORE**, Plaintiff McBride respectfully request this Court enter a judgment against the Debtor Jeffrey Renick Hefner; determining that the debts due to McBride to be non-dischargeable against the Debtor; and granting to Plaintiff any other and further relief, including but not limited to interest, attorneys' fees and costs.

### COUNT V: (Willful and Malicious Injury)
### Objection to Discharge of debt Pursuant to 11 U.S.C § 523(a)(6)

105. Plaintiff McBride restates and realleges paragraphs 1 through 39 above as if fully set forth herein.

106. This is an action to determine dischargeability of a debt pursuant to 11 U.S.C. § 523(a)(6) and Rule 4007 of the Federal Rules of Bankruptcy Procedure.

107. Section 523(a)(6) provides, in pertinent part, that a discharge under section 727 does not discharge an individual debtor from any debt for willful and malicious injury by the debtor to another entity or to the property of another entity.

108. Debtor while a member of ICC intentionally and with fraudulent intent made unauthorized and fraudulent transfers of McBride's property to himself and/or his shell company JRH.

109. The debt owed to McBride by the Debtor is based on conduct described in 11 U.S.C. § 523(a)(6) and is not dischargeable.

110. By virtue of the Debtors intentional and fraudulent conduct, as alleged above, Debtor inflicted willful and malicious injury upon McBride.

111. Debtor intended the injury that resulted from his conduct or knew that his conduct was certain or substantially certain to result in McBrides's injuries.

112. Debtor's conduct was done without just cause or excuse.

113. Debtor with fraudulent and criminal intent, knowingly obtained property of McBride, with the specific intent to deprive McBride of the property.

114. Debtor's conduct was in violation of Florida Statute § 812.014(1).

115. Debtor's conduct was in violation of Florida Statute § 605.0602(6).

116. Debtor's conduct was in violation of Florida Statute § 605.04091.

117. As a result of Debtor's conduct and violations of law, McBride was injured and has lost the benefit and possession of his property.

118. Debtor has failed and/or refused to return the property of McBride.

119. Debtor's Conduct described herein was willful and malicious with the intent to cause injury to McBride, rendering the debt, non-dischargeable pursuant to 11 U.S.C. § 523(a)(6).

**WHEREFORE**, Plaintiff McBride respectfully request this Court enter a judgment against the Debtor Jeffrey Renick Hefner; determining that the debts due to McBride to be non-dischargeable against the Debtor; and granting to Plaintiff any other and further relief, including but not limited to interest, attorneys' fees and costs.

### COUNT VI: (False Pretenses, False Representation, and Fraud)
### Objection to Discharge of debt Pursuant to 11 U.S.C § 523(a)(2)(A)

120. Plaintiff ICC restates and realleges paragraphs 1 through 39 above as if fully set forth herein.

121. This is an action to determine dischargeability of a debt pursuant to 11 U.S.C. § 523(a)(2)(A) and Rule 4007 of the Federal Rules of Bankruptcy Procedure.

122. Debtor made false representations or acted fraudulently in connection with the property obtained from McBride by converting some or all of McBride's property for the Debtor's own use.

123. The obligations of the Debtor set forth in ICC's claim in the Debtor's bankruptcy case constitute a debt for false pretenses, false representations or actual fraud, and that debt is excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A).

124. McBride was damaged as a consequence of the Debtor's actions.

125. Pursuant to 11 U.S.C. § 523(a)(2)(A), the foregoing establishes that McBrides's claim against the Debtor in relation to these damages are non-dischargeable based upon the Debtor's actions.

**WHEREFORE**, Plaintiff McBride respectfully request this Court enter a judgment against the Debtor Jeffrey Renick Hefner; determining that the debts due to ICC to be non-dischargeable against the Debtor; and granting to Plaintiff any other and further relief, including but not limited to interest, attorneys' fees and costs.

### COUNT VII: (Concealment of Financial Records)
### Objection to Discharge of Debtor Pursuant to 11 U.S.C § 727(a)(3)

126. Plaintiffs restates and realleges paragraphs 1 through 39 above as if fully set forth herein.

127. This is an action seeking to deny the discharge of the Debtor pursuant to 11 U.S.C § 727(a)(3).

128. The Debtor has concealed, destroyed, or failed to keep or preserve an any recorded information, including books, documents, records, and papers, from which the Debtor's financial condition or business transaction might be ascertained.

129. The Debtor's concealment of books and records pertaining to the Debtor's financial condition or business transactions is not justified under any of the circumstances of the case.

**WHEREFORE**, Plaintiffs respectfully request this Court enter a judgment against Debtor; determining that the debts of the Debtor to be rules non-dischargeable; granting to Plaintiffs any other and further relief, including but not limited to interest, attorneys' fees and costs.

Dated: May 28, 2021

                                            Respectfully submitted,

                                            *s/Aaron D. Lyons, Esq.*
                                            **AARON D. LYONS, ESQ.**

Florida Bar No. 85758
Email: alyons@laceyandlyons.com
**ETHAN B. BABB, ESQ.**
Florida Bar No.: 0127488
Secondary: ebabb@laceyandlyons.com
**LACEY| LYONS| REZANKA**
1901 S. Harbor City Boulevard
Suite 505
Melbourne, Florida 32901
Tel: (321) 608-0890
Fax: (321) 608-0891