Filing # 84931633 E-Filed 02/14/2019 01:01:31 PM

IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
IN AND FOR BREVARD COUNTY, FLORIDA

JEFF HEFNER,                               CASE NO.: 05-2017-CA-038748-XXXX-XX

      Plaintiff,

vs.

JOHN MacDONALD; ROBERT
McBRIDE; and ISLAND COASTAL
CHARTERS, LLC,

      Defendants.
_____/

## FINAL JUDGMENT

THIS CAUSE came before the Court upon Plaintiff's Complaint and the claims asserted by the parties in the arbitration proceedings before a Commercial Arbitration Tribunal of the American Arbitration Association, Case Number 01-17-0006-0346. Having confirmed and adopted the Final Award of Arbitrators as an Order of this Court, having heard argument of counsel, and being otherwise duly advised in the premises,

JUDGMENT IS HEREBY ENTERED in favor of Island Coastal Charters, LLC, John MacDonald and Robert McBride and against Jeff Hefner, in accordance with the Final Award of the Arbitrators attached hereto and incorporated herein by reference, for which let execution issue.

DONE AND ORDERED at Viera, Brevard County, Florida this 14th day of Feb, 2019.

                                            DAVID DUGAN
                                            CIRCUIT JUDGE

Copies to:

Blake Stewart, Esquire
Michael A. O'Brien, Esquire
Aaron D. Lyons, Esquire

**AMERICAN ARBITRATION ASSOCIATION**
**Commercial Arbitration Tribunal**
**Case Number: 01-17-0006-0346**

In the Matter of the Arbitration between

Island Coastal Charters, LLC, John MacDonald,
Robert McBride (Claimants)
-vs-
Jeffrey Hefner (Respondent)

## FINAL AWARD OF ARBITRATORS

WE, THE UNDERSIGNED ARBITRATORS, having been designated in accordance with the consent of the parties hereto at the December 19, 2017 preliminary hearing in this arbitration case, and having been duly sworn, and having duly heard the proofs and allegations of the Parties, hereby AWARD as follows:

The Claimants were represented by Aaron D. Lyons, Esq., and the Respondent was represented by Blake Stewart, Esq.

### Procedural Background

A. <u>Appointment of Arbitrators, Jurisdiction and Procedural Background (Part 1)</u>

John MacDonald, individually ("MacDonald"), Robert McBride, individually ("McBride") and Jeffrey Hefner, individually ("Hefner" and, collectively with McBride and MacDonald, the "Individual Parties") were parties to case number 05-2017-CA-038748-XXXX-XX, pending in the Circuit Court of the Eighteenth Judicial Circuit in and for Brevard County, Florida. Pursuant to an order issued December 4, 2017, the Circuit Court issued an order which, among other things, directed Hefner to pursue all claims asserted in his complaint in the Circuit Court action "in arbitration if he chooses to pursue them" and stayed the Circuit Court action "pending arbitration."

In response to the Circuit Court order, MacDonald, McBride. and Island Coastal Charters, LLC, a Florida limited liability company ("ICC" and collectively with MacDonald and McBride, the "Claimants") commenced this arbitration case against Hefner on October 9, 2017.

**EXHIBIT A**

Each of the parties was represented by counsel at the December 19 preliminary hearing in this arbitration case. Despite the disagreement as to the existence or non-existence of an enforceable agreement among the parties, and as confirmed in the Report of Preliminary Hearing and Scheduling Order #1 issued by the Panel on December 22, 2017, each of the parties consented to the arbitrability of the dispute raised in this arbitration proceeding and to the seating of each of the Arbitrators in this arbitration proceeding pursuant to Section 13.4 of each of the drafts of the ICC operating agreement.

B. Procedural Background (Part 2)

Following the events discussed above, the Claimants filed their statement of claim on December 21, 2017. In the Statement of Claim, Claimants asserted five counts against Hefner:

(i) An accounting pursuant to Section 605.0410 of the Florida Statutes;

(ii) Disassociation of Hefner from ICC pursuant to Section 605.062(6) of the Florida Statutes;

(iii) Dissolution of ICC pursuant to Section 605.0702 of the Florida Statutes in the event their request for disassociation is not granted;

(iv) Declaratory relief with respect to certain matters in dispute between the parties; and

(v) Injunctive relief against Hefner, including production of certain books, records, logs, and "production" of certain aircraft components and three aircraft, including a Waco YMF, Cherokee 180 and Cherokee VI aircraft.

Hefner filed a detailed response to Claimants' Statement of Claim, and counterclaims. Hefner did not pay the required filing fee in connection with his counterclaim and, as such, the filing was considered to be an incomplete filing by the AAA. The parties were notified of this decision by the AAA by letter dated January 23, 2018. Hefner did not object to this determination.

The final hearing was conducted on August 29 and 30, 2018 (the "Hearing"). Each party was represented by legal counsel at all stages of this proceeding, including at the Hearing. No court reporter was present at the Hearing.

At the Hearing, each of the parties had a full and fair opportunity to present argument and evidence in support of their respective positions. At the conclusion of the Hearing, all parties confirmed they had no

2

Filing 80280973                    JEFF HEFFNER VS JOHN MACDONALD          05-2017-CA-038748-XXXX-XX
Filing 84931633                    JEFF HEFFNER VS JOHN MACDONALD          05-2017-CA-038748-XXXX-XX

further proofs to offer or witnesses to be heard. By agreement of the parties, the proceeding remained open until October 5, 2018 to permit submissions of post-hearing briefs and proposed reasoned awards.

To the extent facts contained in this Final Award differ from any party's position, that is the result of determinations as to credibility, determinations of relevancy, burden of proof considerations and the weighing of oral and documentary evidence.

C. The Alleged Hacking

At the commencement of the second day of the Hearing, counsel to Hefner requested a sidebar among the Panel and counsel to the Claimants. At the sidebar, Hefner's counsel explained that toward the conclusion of the first day of the Hearing, his computer was "hacked", and certain emails removed from his server, that he had an expert who was prepared to testify to the alleged hacking, and that certain of the missing emails were relevant to Hefner's case. Hefner did not request a continuation of the Hearing.

With the consent of the Claimants, Hefner was permitted to introduce testimony of Steve Milanese with respect to the alleged hacking, and to make a proffer as to what the missing emails would have said. Mr. Milanese, who was not offered as an expert, was clearly knowledgeable on the issues to which he testified and was credible. Mr. Milanese testified that he had examined the computer of Blake Stewart (Hefner's counsel) and had concluded that beginning no later than 5:47 pm on August 29, 2018, Mr. Stewart's email account was accessed from an unauthorized device and certain emails were removed from the account. Mr. Milanese further testified that the unauthorized device was physically located within the hotel at which the Hearing was conducted, but that he could not identify the device or the owner of the device, or even that the hacking was directed at files relevant to this arbitration case.

At the conclusion of the Hearing and with the consent of Claimants, Hefner was given an opportunity to proffer the substance of the missing emails and the substance of the evidence that would have been adduced from the missing emails, had he had access to those emails for the duration of the Hearing. The Panel considered the proffer of evidence and assumed the veracity of the entire proffer.

3

Filing 80280973
Filing 84931633

JEFF HEFFNER VS JOHN MACDONALD
JEFF HEFFNER VS JOHN MACDONALD

05-2017-CA-038748-XXXX-XX
05-2017-CA-038748-XXXX-XX

Factual Background and Reasoning

A. The Company Background

Hefner and McBride were friends and neighbors. Hefner was an experienced commercial pilot. Hefner and McBride went into business together, forming the following companies as Florida corporations at varying times in 2015 and 2016: Florida Barnstormers Inc., Flying Tigers Aviation Inc., Old Pelican Aero Inc., and View From Above Inc. (collectively, the "Original Companies"). The purpose of each of the Original Companies was to engage in a separate aviation-related business. Although there was no evidence that share certificates were issued for the Original Companies or other corporate formalities were followed, it is uncontested that each of the Original Companies was owned at the time of its formation 50% by Hefner and 50% by McBride.

In 2016, ICC was formed as a Florida limited liability company. It is uncontested that at the time of its formation, ICC was owned one-third by each of Hefner, McBride and MacDonald. ICC was formed to operate an air charter business. In addition to contributing $150,000 to the venture, MacDonald was to "act as the bank."

B. Ownership of ICC

McBride, MacDonald and Hefner each testified that they jointly caused formation of ICC and each own a one-third interest in ICC. Based on this uncontroverted testimony, the Panel determines that McBride, MacDonald and Hefner each hold a one-third interest in ICC.

C. Ownership of the Original Companies

McBride and MacDonald both testified substantially identically with respect to capital contributions made to ICC by its three members. The gist of that testimony was that each of McBride, MacDonald and Hefner made capital contributions to ICC with an actual or agreed value of $150,000. McBride and Macdonald further testified that MacDonald had made his capital contribution by contributing $150,000 of cash, and that McBride and Hefner made their capital contributions to ICC by a contribution

4

of their respective 50% interest in each of the Original Companies, and that these interests were valued at $150,000 each, primarily as a result of the Original Companies' ownership of certain aircraft.[1]

In contrast, Hefner testified that MacDonald had agreed to make a $150,000 cash contribution to ICC, but that Hefner "had seen" only $100,000 of this contribution. Hefner further testified that his contribution consisted of "sweat equity," and that he was not aware what contribution, if any, McBride made in exchange for his one-third interest in ICC. Finally, Hefner testified that it is his belief that he and McBride each owned 50% of each of the Original Companies at the beginning of their business relationship, that they remained the only two shareholders of the Original Companies, and that as a result of additional capital and sweat equity infused in the Original Companies by Hefner, he now owned a greater but unknown percentage of the stock of the Original Companies.

The Panel evaluated the testimony and other evidence presented at the Hearing. The testimony of MacDonald and McBride was both credible and consistent with the remainder of the evidence presented at the Hearing. Hefner's testimony was less credible and was, in many respects, inconsistent with the evidence at the Hearing and common sense. The overwhelming weight of the evidence demonstrates that the parties believed and acted as if each of the Individual Parties had a direct or indirect ownership interest in each of the Original Companies. Some examples include the lack of formality between ICC and the Original Companies including inter-mingling of cash, employees and operations; payment of liabilities of the Original Companies by ICC or MacDonald; use of money contributed or loaned to ICC by MacDonald to pay operating expenses of the Original Companies; inclusion of MacDonald as Vice President of the Original Companies on the Florida Secretary of State's SunBiz website; inclusion of each of the Original Companies on Exhibit A to each of the drafts of the ICC operating agreement circulated by the parties;[2] a

---

[1] Respondent objected to the exercise of "jurisdiction" over the Original Companies in this arbitration case. The Panel is mindful of the fact that the Original Companies are not party to this arbitration case and, therefore, do not seek to exercise jurisdiction over the Original Companies. Capital contributions made by each of the Individual Parties to ICC are, however, within the scope of this arbitration case and the Panel does, therefore, have the authority to rule on the capital contributions made to ICC by each of the Individual Parties.

[2] One draft of the ICC operating agreement circulated by Hefner's counsel contained a listing of each of the Original Companies on Exhibit A except Old Pelican Aero Inc. Hefner testified that he agreed with this draft of the operating agreement.

5

single website promoting ICC and the businesses of each of the Original Companies; regular written and oral updates provided by Hefner to MacDonald with respect to each of the Original Companies; MacDonald's regular involvement in and influence over decisions affecting the Original Companies, their businesses and assets; and Hefner's failed attempt to "convert" the Original Companies to limited liability companies at MacDonald's request.

There was no evidence presented of additional capital contributions or repayment of capital to any member of ICC. Accordingly, the Panel finds that each of the Individual Parties has a capital account of $150,000 and owns a one-third interest in ICC. McDonald made his capital contribution by contributing $150,000 in cash. McBride and Hefner made their capital contributions by contributing their respective 50% interests in each of the Original Companies to ICC, with an agreed value of $150,000 each. Accordingly, ICC is the owner of 100% of the issued and outstanding stock of each of the Original Companies.

### The Company Operating Agreements

One of the central areas of contention throughout the Hearing was the existence or non-existence of an operating agreement with respect to ICC and the Original Companies. The evidence was uncontroverted that multiple drafts of an operating agreement for ICC were circulated among the parties, meetings and calls were held to discuss changes to the operating agreement, there was never agreement among all of the parties to the final terms of a proposed operating agreement, and no operating agreement was ever signed by all the parties.

Claimants argue that section 605.0106(6) of the Florida Statutes provides that, generally speaking, operating agreements are excepted from the statute of frauds and, therefore, are not required to be signed to be enforceable. Based on this argument, Claimants assert that the "uncontested" portions of the draft operating agreements should be considered an "operating agreement" for ICC and each of the Original Companies, and that the contested portions of the draft operating agreement should default to the provisions of Chapter 605 of the Florida Statutes (despite the uncontested fact that each of the Original Companies is a corporation rather than a limited liability company).

Filing 80280973
Filing 84931633
JEFF HEFFNER VS JOHN MACDONALD
JEFF HEFFNER VS JOHN MACDONALD
05-2017-CA-038748-XXXX-XX
05-2017-CA-038748-XXXX-XX

The Panel concludes that there was never a meeting of the minds among the members of ICC with respect to the terms of an operating agreement for ICC and, therefore, there is no operating agreement governing ICC. The provisions of Chapter 605 of the Florida Statutes therefore govern operation of ICC and the relationship of ICC's members with respect to ICC. The Panel declines to make a determination as to the existence or non-existence of an operating agreement or other governing document for the Original Companies as the Original Companies are not parties to this arbitration case and such a determination is, therefore, beyond the scope of this arbitration.

### The "Accounting"

Although the Claimants requested an "accounting" in their demand at the commencement of the Hearing and both the Claimants and Respondent stated their desire for an "accounting," the parties presented evidence sufficient to permit the Panel to provide only a partial accounting, including ownership of ICC, capital contributions made by the members of ICC, loans made to ICC by MacDonald, and the current value of certain aircraft owned directly or indirectly by ICC.

A. The MacDonald Debt

Each of the three Individual Parties testified that MacDonald "acted as the bank" for ICC and made numerous loans to ICC. MacDonald testified that the aggregate amount of loans he made to ICC and the Original Companies was $949,808. Although McBride testified that MacDonald made numerous loans to ICC, he did not testify to the aggregate amount of these loans. Hefner similarly testified that MacDonald made numerous loans to ICC but was not able to quantify the aggregate amount of the loans. There was no evidence contradicting MacDonald's testimony as to the amount of loans he made to ICC. There was no testimony or other evidence as to the loan terms, or that any portion of the loans had been repaid. Accordingly, the Panel concludes that ICC is indebted to MacDonald in the amount of $949,808.

B. The Value of the Aircraft

There was testimony as to the cost of acquisition and current fair market value of six aircraft, each of which is owned by ICC or one of the Original Companies, except for [two] [three] aircraft owned by

JRH Avgroup, Inc., a Florida corporation ("JRH") at the time of the Hearing.[3] Hefner testified as to the current fair market value of the aircraft. This testimony was both uncontroverted and credible. Based on Hefner's testimony, the Panel finds that the fair market value of the aircraft, as of August 30, 2018, was $415,500, as follows:

| Aircraft Description | Registration No. | Value |
|---|---|---|
| Waco YMF | N89B | $ 122,500.00 |
| Cherokee 180 | N4349T | $ 48,000.00 |
| Cherokee VI | N32394 | $ 90,000.00 |
| Piper Seneca I | N41538 | $ 57,500.00 |
| Piper Seneca III | N8287U | $ 57,500.00 |
| Navajo | N3545Z | $ 40,000.00 |
| Total Value | | $ 415,500.00 |

Disassociation of Hefner

Claimants seek the disassociation of Hefner from ICC or, in the alternative, dissolution of ICC. A member may be disassociated from a limited liability company pursuant to Section 605.0602(6) of the Florida Statutes if the person engages in or commits certain wrongful acts specified in Section 605.0602(6).

There was abundant testimony from McBride, MacDonald and Gary Hall of Hefner's improper conduct. Much of this testimony was actually corroborated by Hefner's own testimony. These acts include but are not limited to changing locks on hangars and having airport access privileges denied to McBride and MacDonald to prevent them from accessing ICC's business premises; removing and hiding property of ICC, including logbooks and other books and records of ICC; denying McBride and MacDonald access to important tax and financial information; hiding aircraft owned by subsidiaries of ICC; pointing a gun at MacDonald and threatening the life of both McBride[4] and MacDonald on separate occasions; acting in a threatening and belligerent manner to employees of businesses with whom ICC did business; failing to

---

[3] Hefner testified that he transferred the Waco and Cherokee VI aircraft from Florida Barnstormers to JRH, for no consideration due to the threat of litigation from MacDonald. Hefner further testified that JRH is wholly owned by Hefner and his wife, and that he transferred the aircraft without consent from any other owner or manager of Florida Barnstormers.

[4] McBride actually sold his family home and moved as a result of fear for his and his family's personal safety as a result of Hefner's threats and Hefner's admonition that McBride "better move out of the state."

8

maintain aircraft to appropriate standards; and making improper and unauthorized filings with the Florida Secretary of State's office with respect to ICC and the Original Companies.

These actions are wrongful conduct that has and, if continued, will continue to affect adversely and materially the activities and affairs of ICC and the Original Companies. Hefner's actions were willful and persistent and constituted violations of his duties under Section 605.04091 of the Florida Statutes, including his fiduciary duties of loyalty and care to ICC and its members, and failure to discharge his duties and obligations consistent with the obligation of good faith and fair dealing. For the foregoing reason, good cause exists to disassociate Hefner as a member of ICC. Because Hefner is disassociated as a member of ICC, there is no basis to order dissolution of ICC.

### Injunctive Relief

There was sufficient testimony that Hefner had improperly removed and retained possession of certain property of ICC, including books, records, logbooks and other property. This testimony went unrebutted. Because this property belongs to ICC, Hefner should be directed to return it to ICC at his sole cost and expense.

### Attorneys' Fees and Costs of Arbitration

Claimants and Hefner have requested an award of attorneys' fees and costs of the arbitration. There is no written agreement and in our opinion no other basis upon which to grant attorneys' fees to any party to this arbitration case. Accordingly, each party will bear its own attorneys' fees in connection with this arbitration case. In accordance with the agreement of the parties, and the rules of the AAA, the Claimants are required to pay 50% of the cost of arbitration and Hefner is required to pay 50% of the cost of arbitration.

The administrative fees of the AAA, totaling $8,500.00, and the compensation of the Arbitrators, totaling $41,134.71 ("Cost of Arbitration"), shall be borne equally. Therefore, Respondent shall reimburse Claimants the sum of $24,817.35 representing fees and compensation advanced by Claimants.

### Award

Based on the law and evidence received, the Panel concludes, determines, and awards as follows:

1. The Claimants are the prevailing parties.

9

Filing 80280973                JEFF HEFFNER VS JOHN MACDONALD               05-2017-CA-038748-XXXX-XX
Filing 84931633                JEFF HEFFNER VS JOHN MACDONALD               05-2017-CA-038748-XXXX-XX

2. Hefner, McBride and MacDonald each own one-third of ICC, and each have a capital account equal to $150,000.

3. ICC is owner of 100% of the issued and outstanding stock of each of the Original Companies.

4. MacDonald is owed $949,808 by ICC.

5. The "accounting" requested by Claimants is as stated in this Award.

6. Hefner is directed to return to ICC all property of ICC in his possession, custody and control forthwith.

7. Hefner is hereby disassociated as a member of ICC.

8. Hefner shall pay an aggregate of $24,817.35 to McBride and MacDonald jointly, constituting 50% of the Cost of Arbitration. MacBride and MacDonald shall split such funds in the proportion the Cost of Arbitration was paid or advanced by each of them. This amount shall be paid on or before thirty days from the date of this Award.

9. This Award is in full settlement of all claims submitted in this arbitration proceeding. All claims not expressly granted herein are hereby denied.

Date: October 30, 2018        s/James P. S. Leshaw
                              James P. S. Leshaw, Panel Chair

Date: October 30, 2018        s/Michael H. Lax
                              Michael H. Lax, Arbitrator

Date: October 30, 2018        s/Daniel Z. Averbook
                              Daniel Z. Averbook, Arbitrator

10

Filing 80280973           JEFF HEFFNER VS JOHN MACDONALD           05-2017-CA-038748-XXXX-XX
Filing 84931633           JEFF HEFFNER VS JOHN MACDONALD           05-2017-CA-038748-XXXX-XX